IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

MARCIA ANN VANCANNON                                                    PLAINTIFF

VS.                              No. 3:24-cv-00153 PSH

MARTIN O'MALLEY,
Commissioner, Social Security Administration                            DEFENDANT

# ORDER

This is an atypical Social Security case. Plaintiff Marcia Ann VanCannon ("VanCannon") has been awarded SSI disability benefits. The dispute here is whether she should have been awarded them at an earlier date. The decision of the defendant[1] ("Commissioner") is supported by substantial evidence. Therefore, the decision is affirmed and the complaint is dismissed with prejudice.

The relevant events follow:

8-2-21   VanCannon applied for Disability Insurance benefits ("DIB") and Supplemental Security Insurance ("SSI"), alleging an onset date of January 9, 2021. VanCannon was awarded SSI benefits with a disability date of July 28, 2022. VanCannon was denied DIB benefits, as her date last insured was December 21, 2021, pre-dating the date on which the Administrative Law Judge ("ALJ") determined she was disabled.

---

[1] The decision in this case involved both the ALJ and the Appeals Council, and the Court will refer to the defendant as Commissioner.

1

> 4-11-23    VanCannon's request for an evidentiary hearing was granted and the hearing occurred to consider the date of disability.
>
> 8-10-23    The ALJ found VanCannon became disabled as of July 28, 2022.[2]
>
> 3-25-24    The Appeals Council granted VanCannon's request for review.
>
> 7-29-24    The Appeals Council adopted the ALJ's findings of law and fact and the ALJ's conclusion that VanCannon was not disabled prior to her date last insured. The Appeals Council, however, disagreed with the ALJ's use of the "borderline age" rule and instead found VanCannon disabled as of January 16, 2023, the day before her 55th birthday. Doc. No. 8-2, page 11.

VanCannon maintains error in the Commissioner's decision that she was not disabled prior to January 16, 2023 because: (1) objective imaging does not support the ALJ's decision that she could perform light work prior to December 21, 2021; (2) clinical examinations do not support this finding of the ALJ; and (3) her limited daily activities are consistent with her complaints and the medical record. VanCannon asserts she is entitled to benefits under Rule 201.14[3] of the medical-vocational guidelines (the "Grids") prior to December 21, 2021. The relevant period

---

[2] The ALJ chose July 28, 2022 as the date of disability because VanCannon was, in his opinion, of a "borderline age" under the pertinent regulations. Doc. No. 8-2, page 26. VanCannon turned 55 years old on January 17, 2023. VanCannon was denied DIB benefits, as her date last insured was December 31, 2021, pre-dating the date on which the ALJ determined she was disabled.

[3] This rule would direct a finding of disabled for a worker who is approaching advanced age (50-54) who is unable to perform a previous job and limited to *sedentary* work. The ALJ found VanCannon unable to perform her past work as a certified nursing assistant or home attendant but found her capable of performing a limited range of *light* work. Doc. No. 8-2, pages 23-26.

for consideration is from January 9, 2021, the alleged onset date, through January 16, 2023, when the Commissioner found her to be disabled.

### *Objective Imaging*

VanCannon has undergone numerous imaging studies. In her brief, she cites the Court to some of these studies, all pre-dating the relevant period. She points to a January 2016 MRI of her lumbar spine and left hip, an April x-ray, a January 2017 MRI of her lumbar spine, a January 2019 CT scan of her lumbar spine and cervical spine, and a March 2020 cervical and lumbar spine MRI. These studies, according to VanCannon, fully support the credibility of her claim of disabling impairments during the relevant period. These studies, however, did not occur during the relevant period, and their evidentiary value is accordingly diluted. The most recent imaging in the recent appears to be a December 16, 2022, MRI of the cervical spine, and the impression of this study was "multilevel disc bulges with associated cervical spinal stenosis and neural foraminal narrowing." Doc. No. 8-23, page 97.

The ALJ acknowledged objective studies showed evidence of disc herniation of the lumbar spine with mild central stenosis and other issues. (Tr. 23). The ALJ further noted that VanCannon's medical providers identified no evidence of ulnar or peripheral neuropathy, acute radiculopathy, strength loss, or gait dysfunction. Specifically, the ALJ pointed to records from NEA Baptist Clinic of Neurology, where VanCannon presented as a new patient in September 2021. This provider

assessed her with intact gait, normal strength, normal range of motion in general, and normal range of motion and neck supple in her cervical back. Doc. No. 8-14, page 38. These normal assessments were repeated when VanCannon was seen again in November 2021. Doc. No. 8-17, page 13. And the ALJ noted VanCannon's decision not to obtain recommended surgery. This occurred on numerous occasions.[4]

In summary, the objective studies cited by VanCannon do not demonstrate error in finding she was disabled on January 16, 2023, but not earlier.

*Clinical Examinations*

As with her claim regarding the imaging studies, VanCannon cites to treatment records outside of the relevant period. These records span from January 2017 through September 2020. The sole treatment record during the relevant period is from NEA Baptist Clinic Neurosurgery, where VanCannon presented as a new patient in July 2022. VanCannon was assessed with positive straight leg raisings at this appointment. At this same visit, however, the provider found her to have normal neck range of motion, motor functioning, coordination, and gait. The provider "still recommend[ed]" neck surgery and carpal tunnel release, and VanCannon again declined this option. Doc. No. 8-22, page 115.

---

[4] VanCannon's opposition to recommended surgery continued throughout the relevant period, although a provider noted in November 2022 "she is progressing to the point where she is ready to consider surgery." Doc. No. 8-23, page 24.

VanCannon correctly states that the clinical examinations over the years contain references to her impairments. The ALJ recognized as much, finding VanCannon had severe impairments, including degenerative disc disease of the cervical spine, cervical spondylosis, degenerative disc disease of the lumbar spine, lumbar spondylosis, myofascial pain syndrome, and migraines. Doc. No. 8-2, page 21. The ALJ also included many exceptions from the full range of light work which VanCannon could perform. The ALJ did not err in citing clinical examination findings consistent with the residual functional capacity, and substantial evidence supports the ALJ's conclusion that VanCannon was not disabled prior to January 16, 2023.

### *Daily Activities*

VanCannon contends her limited daily activities are consistent with the medical record, demonstrating an inability to engage in light work. Once again, VanCannon cites to entries in the record pre-dating the relevant period. For example, she cites records from March and November 2019 when she was seen by Dr. Travis D. Richardson. Doc. No. 8-10, pages 25-86.[5]

---

[5] VanCannon, in a Headache Questionnaire and a Pain Questionnaire, describes limitations in her daily activities and abilities. These documents were executed in June of 2020, outside of the relevant period. Doc. No. 8-7, pages 3-5, 6-8.

More pertinent is VanCannon's 2023 administrative hearing testimony and her 2022 Function Report. She testified at the hearing she could not stand for 30 minutes at a time, stand in one spot for 15-20 minutes, or walk for 15-20 minutes. She described doing light housework in small doses. The ALJ asked additional questions, and VanCannon testified that she drove to medical appointments, stores, and did grocery shopping. She lived alone, and did laundry, dishes, and cooking, although these tasks were done slowly. She attended church on Sundays. Doc. No. 8-2, pages 55-56, 67-68.

The June 2022 Function Report completed by VanCannon reflects many limitations but also some abilities. For example, VanCannon noted that she visited daily in person and on the phone with others, and regularly went to the doctor, church, and to visit her parents. She tried to go outside daily, drove alone, cleaned her house, and did laundry and some mowing. Doc. No. 8-7, pages 79-86.

The ALJ considered VanCannon's statements concerning her symptoms and found them "not fully supported." Doc. No. 8-2, page 24. The ALJ noted VanCannon's testimony and also cited the absence of significant limitations from her medical care providers, her failure to receive additional treatment, and her failure to follow up for more aggressive treatment. *Id.* at page 25.

The ALJ adequately considered VanCannon's daily activities, and substantial evidence exists for the conclusions reached. The ALJ's decision did not fall outside

of the "available zone of choice." *Ross v. O'Malley*, 92 F.4th 775, 778 (8th Cir. 2024) (quoting *Kraus v. Saul*, 988 F.3d 1019 (8th Cir. 2021)).

In summary, the Court finds the ultimate decision of the Commissioner regarding the date on which VanCannon became disabled was supported by substantial evidence. The Court is mindful that its task is not to review the record and arrive at an independent decision, nor is it to reverse if some evidence supports a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is satisfied in this case.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is affirmed and VanCannon's complaint is dismissed with prejudice.

IT IS SO ORDERED this 9th day of April, 2025.

_____
UNITED STATES MAGISTRATE JUDGE